NO. _____

In The

# United States Court of Appeals

For The Fourth Circuit

v.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE                                                           AT

_____

_____

Counsel for

**TABLE OF CONTENTS**

*Content*                                                                    *Page #*

Table of Contents --------------------------------------------------------- i.

Table of Authorities ------------------------------------------------------ ii.

Statement of Jurisdiction ------------------------------------------------- 1.

Statement of the Issues --------------------------------------------------- 2.

Statement of the Case ----------------------------------------------------- 3.

Summary of the Argument -------------------------------------------------- 8.

Argument ----------------------------------------------------------------- 14.

    I.       THE DISTRICT COURT ERRED IN RULING THAT THE
                DEFENDANT'S ARE ENTITLED TO QUALIFIED IMMUNITY
                AND THAT HOAGLANDS' § 1983 CLAIMS ARE NOT VIABLE
                BECAUSE IT APPLIED AN INCORRECT STANDARD OF LAW
                AS TO EACH FINDING---------------------------------------------- 15.

            A. Violation of Hoagland's First Amendment Rights-----------------19.
            B. Qualified Immunity-----------------------------------------------22.

    II.     THE DISTRICT COURT'S ORDER, GRANTING SUMMARY
                JUDGMENT IN FAVOR OF THE DEFENDANTS' IS NOT
                BASED ON THE RECORD, AND/OR IS CONTRARY TO THE
                RECORD, PARTICULARLY UNDER THE "LIGHT MOST
                FAVORABLE TO THE NON-MOVING PARTY" SUMMARY
                JUDGMENT STANDARD------------------------------------------ 27.

    III.   III.DISTRICT COURT ERRED IN GRANTING SUMMARY
                JUDGMENT IN FAVOR OF THE NAMED DEFENDANTS'
                AS TO HOAGLAND'S ABUSE OF PROCSES CLAIM, AS THE
                EXISTANCE OF MATERIAL DISPUTES OF FACT PRECLUDE
                THE ENTRY OF JUDGMENT------------------------------------- 32.

Prayer for Relief --------------------------------------------------------- 37.

Certificate of Compliance ------------------------------------------------- 37.

**TABLE OF AUTHORITIES**

*Authority*                                                                 *Page #*

28 U.S.C. § 1291 (2019) ------------------------------------------------------------ 1.

28 U.S.C. § 1331 (2019) ------------------------------------------------------------ 1.

42 U.S.C. § 1983 (2019) --------------1, 2, 4, 9, 14,  15, 16, 18, 19, 20, 22, 37.

Fed. R. Civ. P. 52 (2019) ------------------------------------------------------27, 28.


*Abbott v. Pastides*, 900 F. 3d 160 (4th Cir. 2018) ------------------------------ 18.

*ACLU v. Wicomico Cnty, Maryland*, 999 F. 2d 780 (4th Cir. 1993) --------- 16.

*Albino v. Baca*, 747 F. 3d 1162 (9th Cir. 2014) --------------------------------- 28.

*Am. Civil Liberties Union of Maryland, Inc. v. Wicomico Cnty, Md.*,

999 F. 2d 780 (4th Cir. 1993) ----------------------------------------------------- 18.

*Bartley v. Taylor*, 25 F. Supp. 3d 521 (M.D. Penn. 2014) -------------15, 17, 20.

*Bd. Of Cnty Commissioners v. Umbehr*, 518 U.S. 668 (1996) ---------------- 17.

*Campbell v. Wood*, 18 F. 3d 662 (9th Cir. 1994) ------------------------------- 27.

*Castine v. Castine*, 743 S.E. 2d 93 (S.C. App. 2013) --------------------------- 34.

*Constantine v. Rectors & Visitors of George Mason Univ.*,

411 F. 3d 474 (4th Cir. 2005) ------------------------------------------------- 15, 19.

*Cooksey v. Futrell*, 721 F. 3d 226 (4th Cir. 2013) -------------------------- 18, 19.

*Glasson v. Cty of Louisville*, 518 F. 2d 899 (6th Cir. 1975) --------------------32.

*Guinn v. Chater*, 83 F. 3d 431 (10th Cir. 1996) -------------------------------- 27.

*Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252 (11th Cir. 2004) --- 23.

*Hugger v. Rutherford Institute*, 63 Fed. Appx. 683 (4th Cir. 2003) ---------- 33.

*Hunter v. Town of Mocksville, N. Carolina*, 789 F. 3d 389 (4th Cir. 2015) - 24.

*Lamle v. Mattel, Inc.*, 65 Fed. Appx. 293 (D.C. Cir. 2003) -------------------- 14.

*Lee v. Ferraro*, 284 F. 3d 1188 (11th Cir. 2002) --------------------------------- 24.

*McCloud v. Testa*, 97 F. 3d 153662 (6th Cir. 1997) ----------------------------- 24.

*Meloff v. New York Life Insur. Co.*, 240 F. 3d 138 (2d Cir. 2001) ------------ 33.

*Murray v. Holnam Inc.*, 542 S.E.2d 743 (S.C. App. 2001) --------------------- 34.

*Perry v. Sinderman*, 408 U.S. 593 (1972) ------------------------------------- 17.

*Pickering v. Bd. Of Educ.*, 391 U.S. 563 (1968) ---------------------------------- 16.

*Pritchett v. Alford*, 973 F. 2d 307 (4th Cir. 1992) -------------------------------- 23.

*Roe v. Doe*, 28 F. 3d 404 (4th Cir. 1994) -------------------------------------- 14.

*Sherbert v. Verner*, 374 U.S. 398 (1963) ------------------------------------- 17.

*Sherwood v. Washington Post*, 871 F. 2d 1144 (D.C. Cir. 1989) --------------- 28.

*Spannus v. United States Dept. of Justice*, 813 F. 2d 1285 (4th Cir. 1987) ----- 28.

*Storck v. Cty of Coral Springs*, 354 F. 3d 1307 (11th Cir. 2003) ----------------- 23.

*Suarez Corp. Indus. v. McGraw*, 202 F. 3d 676 (4th Cir. 2000) ------------- 16, 17.

*Thaddeus-X v. Blatter*, 175 F. 3d 378 (6th Cir. 1999) ----------------------------- 16.

*The Baltimore Sun Co. v. Ehrilich*, 437 F. 3d 410 (4th Cir. 2006) --------------- 17.

*Tindal v. Montgomery Cnty, Comm.*, 32 F. 3d 1535 (11th Cir. 1994) ----------- 24.

*Waganer v. Sea-Land Serv., Inc.*, 486 F. 2d 955 (5th Cir. 1973) ---------------- 28.

## STATEMENT OF JURISDICTION

The District Court obtained subject-matter jurisdiction in this cause because the case presents a federal question. *See* 28 U.S.C. § 1331 (2019). More specifically, Hoagland alleges in the Complaint that the named Defendants violated his First Amendment rights and sought to remedy this wrong under 42 U.S.C. § 1983 (2019). On or about October 25, 2018 the District Court granted the Defendants joint motion for summary judgment as to all of Hoagland's claims. [JA486-493, generally; DE55]. The District Court accordingly entered a final judgment, disposing of all the issues in the case. [JA486-493; DE56]. On November 22, 2018, Hoagland filed a timely motion for reconsideration. [Appendix cite; DE61]. The District Court denied the motion for reconsideration on November 26, 2018 [JA509-513; DE62]. The entry of judgment became final on the date that the motion for reconsideration was denied by this Honorable Court. *See* 28 U.S.C. § 1291 (2019). Accordingly, on December 21, 2018 Hoagland filed a timely notice of appeal. [JA514; DE63].

1

## STATEMENT OF THE ISSUES

I.    THE DISTRICT COURT'S ERRED IN RULING THAT THE DEFENDANT'S ARE ENTITLED TO QUALIFIED IMMUNITY AND THAT HOAGLANDS' § 1983 CLAIMS ARE NOT VIABLE BECAUSE IT APPLIED AN <u>INCORRECT STANDARD OF LAW</u> AS TO EACH FINDING.

      A. PREVENTION OF SPEECH
      B. QUALIFIED IMMUNITY

II.   THE DISTRICT COURT'S ORDER, GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS' IS NOT BASED ON THE RECORD, AND/OR IS CONTRARY TO THE RECORD, PARTICULARLY UNDER THE "LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY" SUMMARY JUDGMENT STANDARD.

III.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE NAMED DEFENDANTS' AS TO HOAGLAND'S ABUSE OF PROCSES CLAIM, AS THE EXISTANCE OF MATERIAL DISPUTES OF FACT PRECLUDE THE ENTRY OF JUDGMENT.

## TATEMENT OF THE CASE

Although this appeal concerns only the Complaint filed by Hoagland against the named Defendants, and removed to Federal Court thereafter on May 25, 2017, a full understanding of the related *state court litigation* is critical to the facts and circumstances challenged herein. The issues in this litigation really began on or about December 10, 2015, when Defendant Kim Likins ("Likins") filed a verified complaint against Hoagland, individually, in the Court of Common Pleas for the Fourteenth Judicial Circuit alleging intentional infliction of emotional distress, defamation and numerous other actions ("the Likins litigation") [JA197-203; DE47-10].

After the Likins litigation commenced, on April 6, 2017 Hoagland filed a direct action against the named Defendants herein, including Likins. [JA14; DE1-1]. It was that direct action that is now before the court (having been removed in May of 2017).[1] The critical disputed issue to be decided in the still pending Likins litigation, is whether or not Hoagland's statements, publications, and actions were

---

[1] Prior to filing the direct action in state court (which became this federal litigation), on March 13, 2017 Hoagland filed a motion for leave to amend his Answer, adding many of the claims asserted herein, in the Likins Litigation. [Appendix cite; DE47-16; DE47-15]. On or about June of 2017 (months later) the State court denied Hoagland's motion for leave to amend, in large part due to the fact that he had failed a separate action, which had been removed to Federal Court. *Id.*

3

protected free speech, or whether or not Hoagland exceeded the protections of the First Amendment, by acting with "actual constitutional malice", such that the First Amendment would not bar an action for defamation under South Carolina law. [JA194-203; DE47-10]. Likins' has stipulated that the governing standard for her defamation claims in the Likins' litigation is *constitutional malice* as held in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

In this Federal case, Hoagland has alleged several causes of action; two (2) of which are of relevance to this appeal: (count I) abuse of process and (count V) violation of 42 U.S.C. § 1983. [JA14-29; DE1-1]. The crux of Hoagland's Complaint against the named Defendants in this action surrounds the filing of the Likins' litigation, and the actions taken by the named Defendants prior to filing that action. *Id.* More specifically, Hoagland asserts that the named Defendants took affirmative steps to prevent him from speaking, in violation of his First Amendment rights. *Id.* In addition, Hoagland contends that the actions taken by the named Defendants were retaliatory acts, which sought to punish Hoagland for exercising his First Amendment rights to criticize public official Likins. *Id.*

Hoagland contends that, in an unprecedented and highly inappropriate endeavor, the named Defendants actually sponsored the State court Likins' litigation. In fact, the named Defendants have utilized tax payer funds, to fund the

Likins' litigation.[2] *Id.* Further, not only have the named Defendants used tax payer funds to pay for a <u>private</u> action between one private citizen against another, which will undoubtedly favor only a *private interest* (i.e., the interest of Defendant Likins), but they have done so to the tune of nearly two hundred thousand dollars ($200,000.00). [JA414; DE51-15] [JA399-400; DE51-12] [JA403-404;DE51-13].

Hoagland is, and has been, a political advocate for transparency with respect to the use of public accommodations tax money by the Hilton Head-Bluffton Chamber of Commerce. [JA75; DE47-1]. In fact, the Likins' litigation was spurned by Hoagland's lobbying efforts with respect to a proposal to increase transparency in the relationship between the Town of Hilton Head-Bluffton and the Chamber of Commerce. *Id.* In his efforts to expose corruption and self-dealing, Hoagland made several unflattering remarks regarding Likins across a variety of platforms including emails, oral statements, telephone calls, and in-person meetings. [JA196-203; DE47-10].

In response to these remarks, Likins collaborated with Town of Hilton Head Island officials, who determined the Town would fund private litigation. [JA355-356; D51-3][JA359-360;DE51-4]. Although the Town of Hilton Head Island has acknowledged that tax payer funds <u>must</u> be used for a public purpose, the named

---

[2] Defendant Edwards admitted in his deposition that the money used to fund the Likins' litigation was "tax payer money." [JA452-453;JA461; DE51-19].

Defendants nevertheless spent nearly two hundred thousand dollars of tax payer funds for a private purpose; i.e., the funding of the Likins' litigation. [JA399-404; DE51-12; 51-13].[3] In addition to actually funding the Likins' litigation, the named Defendants on two occasions actually prevented Hoagland from speaking in a public forum.

First, on or about December 15, 2015 just *five (5) days after* the Likins litigation was filed, Hoagland appeared at a public town council meeting. [JA364; DE51-5]. The minutes of the December 15, 2015 meeting reflect that:

> Upon completion of [Hoagland's] comments, Mayor Bennett noted that his understanding of the Town Code is that only citizens of Hilton Head Island can approach and discuss a matter with Council and since [Hoagland] is not a citizen of the Island, and until such time that a majority of Council overturns his decision, [Hoagland] will not be invited or allowed back to speak at Council.

[JA364; DE51-5]. The video evidence of that meeting clearly shows that one of the named Defendants actually interrupts Hoagland while he is speaking and directs that he not speak about the topic. *See* Town Meeting – 12/15/15, *available at* http://beaufort.granicus.com/MediaPlayer.php?view_id=3&clip_id=2436.

Thereafter, on January 19, 2016 Hoagland appeared at the next regularly scheduled Town Council Meeting. [JA393; DE51-11]. The video evidence of that

---

[3] Likins did not report the Town money (which in total amounts to $183,680.22) used to fund her lawsuit in her State Ethics Commissions disclosures. [Appendix cite; DE51-17].

6

meeting clearly shows that Hoagland applied to speak and the named Defendants
<u>initially prevented Hoagland from speaking</u>. *See* HHI Town Meeting – 1/19/16
[4][JA393; DE51-11]. A recess was eventually held, and a vote was taken by the
Council as to whether Hoagland would be permitted to speak. *Id.* The council did
vote in favor of permitting Hoagland to speak, but only <u>after</u> he had been prohibited
and his speech prevented.

When Defendant Edwards was asked why Hoagland had been prevented from
speaking, he replied that at least one town member simply "didn't want to hear
Hoagland talking anymore." [JA456; DE51-19]. Defendant Edwards also explained
that he could not "recall ever telling anybody they couldn't speak if they were not a
citizen of Hilton Head" – the justification apparently used to stifle Hoagland's
speech. [JA456; DE51-19].[5] Further, when asked what the purpose of the Likins'
litigation was, Defendant Edwards testified:

> [Edwards:] Well, [the litigation] *sends a message*.
> [Attorney:] What message is that?
> [Edwards:] That people shouldn't improperly or unlawfully harass
> Council members for their view points on Council.
> [Attorney:] And what service would that have to the citizens of Hilton
> Head? Would it encourage them not to do the same thing? Is that the
> message it was sending?
> [Edwards:] It would encourage them to act within – within the law.

---

[4] HHI Town Meeting – 1/19/16 video *available at*
http://beaufort.granicus.com/MediaPlayer.php?view_id=3&clip_id=2470.
[5] Defendant Likins also stated that she was unaware of any prohibition on the rights
of "nonresidents" to speak in Town meetings. [Appendix cite; DE51-20].

[JA458-459; DE51-19]. Defendant Edwards also acknowledged that Hoagland was *motivated* to speak against Likins by his concern for public matters, namely, her vote regarding the Chamber of Commerce Contract. [JA460; DE51-19].[6]

In essence, Hoagland claims that the named Defendants sanctioned, and funded, legal action against him out of a desire to *make him an example* to those who might speak out against their elected officials. What is more, in addition to funding and/or sponsoring a lawsuit against him, the named Defendants took <u>actual measures</u> to prevent Hoagland from speaking out, in violation of his First Amendment rights. Even assuming that no <u>actual prevention of speech</u> occurred on December 15, 2017 or January 19, 2018 (at the town council meetings) the actions of the named Defendants in combination with their improper sponsorship of a legal action against Hoagland constitute a <u>chilling effect</u> of his right to free speech, and/or retaliation against Hoagland for his use of free speech.

## SUMMARY OF ARGUMENT

The District Court granted summary judgment in favor of the named Defendants as to each of Hoagland's claims. However, Hoagland challenges only

---

[6] Even Likins herself testified that Hoagland was *motivated* to speak against her by his concern for a public issue – her stance on issues, including the Chamber of Commerce contract, as a public official. [Appendix cite; DE51-20]. Likins also conceded that whether she was "corrupt" or a "liar" – the allegations claimed to be defamatory - were matters of *public concern*. *Id.*

the Court's entry of judgment as to counts one (1) and five (5) alleging abuse of process and prevention of speech in violation of 42 U.S.C. § 1983. With regard to Hoagland's claims under § 1983 the Court found that: (a) the named Defendants had not <u>actually prevented</u> Hoagland's speech, nor engaged in actions that would have a chilling effect on speech; and/or (b) that because Hoagland's First Amendment rights had not been hindered, the doctrine of sovereign immunity barred Hoagland's claims. With regard to Hoagland's abuse of process claims, the District Court determined that no "reasonable juror" could find that the Likins litigation was motivated by any other reason, then to <u>deter Hoagland's speech</u>.[7]  In making these conclusions, the District Court Erred in three (3) distinct ways.

First, Hoagland asserts that the District Court erred by applying an *incorrect legal standard* in determining the applicability of the named Defendants qualified immunity defense, and the viability of his § 1983 claim. The District Court found that Hoagland's § 1983 claim was *not viable* because of the *good intentions* of the

---

[7]  Hoagland asserts that the issue of defamation was not, and is not now, ripe to be determined in this Federal case. Defamation is a state matter, which is presently pending for review in State Court. Further, assuming *arguendo* that the matter was ripe for the District Court to review; the District Court failed to engage in the proper analysis under state law. The District Court failed to consider the *New York Times Co. v. Sullivan* standard, and likewise failed to consider whether the speech at issue was *privileged* by the First Amendment. These considerations are *absolutely necessary* to a determination of "defamation", and any insinuation of a finding of defamation absent these considerations is contrary to law. *See also* n. 21, *infra*.

named Defendants in initiating the litigation. [JA490; DE55]. More specifically, the District Court stated that the "evidence supports that the Likins' lawsuit was not initiated to chill Plaintiff's speech, but rather in response to Plaintiff's threats to publicly disgrace Likins." [JA490; DE55]. In focusing on the *motivation of the retaliator* rather than the *effect on the speaker*, the District Court completely misapplied First Amendment retaliatory action law.

Under well-settled law, the District Court should have considered a number of factors including the status of the speaker, the status of the retaliator, and the relationship between the parties. Further, the District Court was *required* to consider whether the named Defendants actions (in initiating publicly funded litigation, and twice publicly silencing Hoagland) would have chilled the speech of a reasonably firm individual; an objective standard. Under present retaliation law, the *intent of the retaliator* in taking action is *wholly irrelevant*. Further, the *legality* of the actions of the retaliator are *irrelevant* – particularly in the context of a public officials actions against a private citizen in response to that citizens exercise of his or her First Amendment rights.

By focusing on the *motivation* of the retaliator, and the perceived *legality* of the retaliator's actions (rather than the effect on an objectively firm speaker) the Court <u>wholly misapplied governing law</u> and utilized an <u>incorrect standard of law</u> in

10

granting summary judgment in favor of the named Defendants. What is more, the misapplication of the law caused an incorrect result. When viewing the record facts from the objective perspective of a reasonably firm individual, there are *at least* questions of fact as to whether such person *would have been chilled* by the conduct. The named Defendant's actions of funding and essentially sanctioning, a private lawsuit, and *twice* publicly humiliating Hoagland by preventing his speech in a public forum create such a question.

Second, Hoagland asserts that the trial court's findings in support of the entry of judgment are <u>contrary to the record</u> or are otherwise <u>unsupported by the record</u>. Hoagland asserts that this error, in and of itself, warrants reversal of the entry of judgment against Hoagland. More specifically, the District Court expressly found: (1) that the named Defendants did not "prevent" Hoagland from speaking. [JA490; DE55]; and (2) that the Likins' litigation was *motivated* by an intention to stop defamatory speech[8] [JA491; DE55]. These findings are not supported by the record and are contrary to the record.

The record evidence of the December 15, 2016 and January 19, 2019 Town Council meetings establish that Hoagland was <u>actually prevented</u> from speaking. In the December 15, 2016 meeting, Hoagland sought to speak about the *publicly funded*

---

[8] *See* n. 6, *supra*; n. 21, *infra*.

Likins' litigation and was informed that he could <u>not</u> speak on this topic. Further, although Hoagland was ultimately permitted to speak at the January 19, 2019 meeting, this fact does not somehow "undo" the initial prohibition of Hoagland's speech by the named Defendants.  Accordingly, the District Court's findings are contrary to, and are simply unsupported by, the record.

In addition, the District Court's finding regarding the *motivation* behind the Likins' litigation are contrary to the record before it. Numerous depositions supported the fact that the Likins' litigation was *motivated* by a desire to send a "message" to the community about speaking out against public officials. In addition, the record supports a finding that Hoagland's publications against Likins' were *protected* and not *defamatory* in nature.[9] In the light most favorable to Hoagland, these record facts create a genuine issue as to *what* motivated the initiating of process against Hoagland and whether these ulterior motives constitute abuse of process.

As to the third issue for Appellate Review, HHoagland asserts that the District Court considered matters that were not, and are not now, ripe for review by the Federal Court. The District Court, without engaging in any of the necessary analysis *under state defamation law*, determined that Hoagland's speech could have only been *motivated* by a proper purpose – to hinder Hoagland's verbal and written

---

[9] *See* n. 6, *supra*; n. 21, *infra*.

attacks. However, the District Court failed to consider whether Hoagland's apparent "attacks" were *privileged* and accordingly not actionable under defamation law. What is more, the District Court entirely failed to engage in the analysis for defamatory speech directed toward a public official, regarding a public matter. The *New York Times Co. v. Sullivan* standard requires a complex and in depth analysis regarding the intention of the alleged defamer, including his motivation for speech and his believe in his speech.

Hoagland argues that these state court matters were entirely improper considerations in this Federal case, and are questions of fact for the state court jury in the Likins' litigation. However, assuming *arguendo* that <u>constitutional malice</u> is a question of *law*, which the District Court had authority to address10the record evidence contains clear questions of fact as to that determination. The cold record before the trial court establishes that, even the named Defendants believe that Hoagland was *motivated* by a public concern in making his allegedly defamatory remarks. [JA460; DE51-19] [JADE51-20]. Further, the record reveals that at least one of the named Defendants believes that Hoagland truly *believes* that his allegedly defamatory allegations are *true*. [JA475; DE51-20] Under these facts, the jury *could*

---

[10] Hoagland also points out that it is Likins, as the party claiming defamation, who bears the burden of establishing constitutional malice and, accordingly, establishing the *tortious* nature of the remarks at issue.

find that Hoagland's speech was protected; a finding that directly affects the determination of his § 1983 and abuse of process claims.

Accordingly, for the reasons stated above, either collectively or individually, the District Court erred in granting summary judgment as to Hoagland's abuse of process and § 1983 claims and the Order granting summary judgment must be reversed.

## ARGUMENT

*Standard of Appellate Review*

> The standard of review for a district court's grant of summary judgment is *de novo*. The standard for granting summary judgment, which we revisit on appeal, is met if upon review of all the pleadings, depositions, affidavits, and other documents submitted by the parties, the court finds that the moving party is entitled to judgment as a matter of law. In evaluating the evidence, the court must draw all reasonable inferences in favor of the non-moving party. Similarly, in [Appellate] *de novo* review, [the Appellate Court] must draw all reasonable inferences in favor of the appellant.

*Roe v. Doe*, 28 F. 3d 404, 406-07 (4th Cir. 1994).

Further, this Court is not required to give *deference* to the District Court's factual findings. *Lamle v. Mattel, Inc.*, 65 Fed. Appx. 293, 294-95 (D.C. Cir. 2003) ("When a district court grants summary judgment, [the Appellate Court] review[s] without deference to the trial court whether there are disputed material facts, and review[s] independently whether the prevailing party is entitled to judgment as a matter of law.").

14

I.   THE DISTRICT COURT ERRED IN RULING THAT THE
     DEFENDANT'S ARE ENTITLED TO QUALIFIED IMMUNITY AND
     THAT HOAGLANDS' § 1983 CLAIMS ARE NOT VIABLE BECAUSE
     IT APPLIED AN <u>INCORRECT STANDARD OF LAW</u> AS TO EACH
     FINDING.

With regard to Hoagland's claim under § 1983, the District Court granted

summary judgment on separate, but interrelated grounds. The District Court first

ruled that <u>no prevention of speech had occurred</u>, that the named defendants' conduct

did not have a chilling effect on speech and accordingly, no Constitutional violation

had occurred as a matter of law. As such, and secondarily, the District Court

explained that, since no constitutional right was at issue, the defense of qualified

immunity precluded Hoagland's claim.

Hoagland asserts that in finding no chilling effect and/or retaliation the District

Court applied an improper standard of law. Hoagland asserts that the District Court's

first error necessarily impacted its decision regarding qualified immunity. Since each

of the District Court's legal findings are based on the same premise: that no

constitutional violation occurred – these issues are addressed together.

"The First Amendment right to free speech includes not only the affirmative right

to speak, but also the right to be free from retaliation by a public official for the

exercise of that right." *Bartley v. Taylor*, 25 F. Supp. 3d 521, 529 (M.D. Penn. 2014).

*See also Constantine v. Rectors & Visitors of George Mason Univ*., 411 F. 3d 474,

500 (4th Cir. 2005) ("First Amendment <u>retaliation</u> is actionable [under 42 U.S.C. §

15

1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *ACLU v. Wicomico Cnty, Maryland*, 999 F. 2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 574 (1968) (emphasizing that retaliatory acts by a public official are "a potent means of inhibiting speech.").

The determination of whether "a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a <u>fact intensive inquiry</u> that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator and the nature of the retaliatory acts." *Suarez Corp. Indus. v. McGraw*, 202 F. 3d 676, 686 (4th Cir. 2000). *See also Thaddeus-X v. Blatter*, 175 F. 3d 378, 398 (6th Cir. 1999) ("The definition of adverse action is not static across contexts.").

Where, as here, the alleged violator is a *public official* and the speaker is a *private citizen* the <u>nature</u> of the retaliatory acts are of particular importance. *Suarez Corp.*, 202 F. 3d at 686. In these situations, when the public official takes some *official action* against the citizen, which amounts to more than public criticism or other retaliatory *speech*, the likelihood that the acts will be found to have a *chilling effect*

on the citizens' speech is particularly high. *Id.* at 686-87. *See also Bd. Of Cnty Commissioners v. Umbehr*, 518 U.S. 668, 686 (1996) (holding that the termination of a garbage contract constituted retaliation for an independent contractor's exercise of free speech); *Sherbert v. Verner*, 374 U.S. 398, 409-10 (1963) (finding that retaliation existed where the government denied benefits to a person whose religion prevented her from accepting a job).

In addition, "[because] government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials <u>may not, as a general rule</u>, respond to an individual's protected activity with conduct or speech even though the conduct or speech would otherwise be a lawful exercise of public authority." *Bartley*, 25 F. Supp. 3d at 530. *See also The Baltimore Sun Co. v. Ehrlich*, 437 F. 3d 410, 415 (4th Cir. 2006) (recognizing that a public official may not act in retaliation, <u>even though a lawful measure</u> in response to a private citizens' speech); *Suarez Corp.*, 202 F. 3d at 685 (4th Cir. 2000) (explaining that retaliatory conduct by a political group or figure by action is improper, even if such action is in fact legal); *Perry v. Sinderman*, 408 U.S. 593, 597 (1972) ("If the Government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.").

Further, to establish a claim for retaliation, the speech at issue need not have been "chilled in <u>fact</u>." *Cooksey v. Futrell*, 721 F. 3d 226, 236 (4th Cir. 2013) ("[A] claimant need not show he ceased those activities altogether to demonstrate an injury []. Government action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights.); *Am. Civil Liberties Union of Maryland, Inc. v. Wicomico Cnty, Md.*, 999 F. 2d 780, n. 6 (4th Cir. 1993) ("We do not suggest that a plaintiff alleging retaliation must show that the action taken in response to her [or his] exercise of constitutional rights independently deprives her [or him] of a constitutional right. Such a rule would make a cause of action for retaliation wholly redundant of the protections provided by the Constitution itself. We merely find that these § 1983 Plaintiffs [must suffer more] than *de minimis* inconvenience.").

Instead, the Court must determine whether the conduct complained of is "likely to deter a person of <u>ordinary firmness</u> from the exercise of First Amendment rights." *Abbott v. Pastides*, 900 F. 3d 160, 169 (4th Cir. 2018). This standard is an objective one, which requires the court claimant to establish a "chilling effect [that is] <u>objectively reasonable</u>." *Id.* **This inquiry focuses not on the *intention* of the retaliator, but instead considers whether an objectively firm individual would have been deterred from speaking, as a result of the retaliators actions**. *Abbott*, 900 F. 3d at 169.

18

In that regard, "while [a] plaintiff[s] actual response to [] retaliatory conduct provides *some evidence* of the tendency of that conduct to chill First Amendment Activity, *it is not dispositive*." *Constantine*, 411 F. 3d at 500. Along the same vein, the *subjective intent* of the person or entity seeking to *chill* speech is irrelevant to the determination of whether a "person of ordinary firmness" would be deterred. *Cooksey*, 721 F. 3d at 236 ("allegations of *subjective chill* are not adequate.").

A. *Violation of Hoagland's First Amendment Rights*

In the instant case, the crux of Hoagland's claims under § 1983 involve three express actions by the Defendants. First, on or about December 10, 2015 Defendant Likins, <u>with the funding and sponsorship of the other named defendants,</u> filed a lawsuit against Hoagland. [JA197-203; DE47-10]. Shortly thereafter, on December 15, 2015 Hoagland attended a public Town Meeting, wherein he was <u>actually prevented</u> from speaking by the named Defendants. [JA365; DE51-5]. Although Hoagland had been informed at that meeting that he would not be permitted to attend, or speak at any subsequent meeting of the Town, Hoagland nevertheless appeared at the next scheduled meeting. At that meeting, on January 19, 2018 Hoagland once again attempted to speak, and was once again <u>actually prevented from speaking</u>. [JA393; DE51-11]. Hoagland asserts that all of these actions were taken by the

named defendants in response to and as retaliation for his exercise of *free speech* against Defendant Likins.

In granting summary judgment against Hoagland as to his § 1983 claims the Court focused exclusively not on whether the three above stated actions were "<u>likely to deter a person of ordinary firmness</u>" from further speech, but instead on the improper fact of <u>the motivation of the retaliators</u> (the named Defendants) in taking these actions. In fact, the Court explained that, "the evidence likewise supports that the Likins lawsuit was not <u>initiated to chill Plaintiff's speech</u>, but rather in response to Plaintiff's threats to publicly disgrace Likins." [JA490; DE55]. Focusing on <u>why</u> the named Defendants ultimately took legal action is entirely improper and misapplies the appropriate standard for a retaliatory First Amendment claim.

What is more, the Court erroneously focused on the fact that, in its opinion, the Likins litigation was <u>legally initiated</u>. [JA492; DE55] ("[A] reasonable fact finder would not conclude from the evidence . . . that Defendants' conduct is <u>unlawful</u>."). In the context of retaliatory prevention of speech, the <u>legality</u> of the official action is not a proper factor to consider. *See Bartley*, 25 F. Supp. 3d at 530. The purpose of First Amendment protection in this area, is to ensure that even facially valid, legal, actions by a public officials are not improper retaliatory acts, taken to punish, inhibit, or chill speech.

20

When considering the facts presented to the trial court under the appropriate legal standard, there are clearly questions of fact that preclude judgment in this case. The named Defendants have not, and factually cannot, deny that the Likins litigation was initiated in December of 2016 after Hoagland began a campaign to inform the public of his belief in Defendant Likins' corrupt political dealings- speech clearly protected by the First Amendment.

In addition, the named Defendants have not, and factually cannot, dispute that at two separate meetings, the named Defendants took action to prevent Hoagland's speech. Each of these incidents occurred in short succession of the other (December 10, 2017; December 15, 2017; and January 19, 2018). A person of ordinary firmness would have certainly been deterred from speaking (or his speech chilled) as a result of the named defendants twice publicly humiliating the speaker at Town Meetings, and in the midst of that, being hauled into Court to defend against claims stemming from the exercise of free speech.[11]

---

[11] Hoagland recognizes that the filing of a private lawsuit would not ordinarily be questionable, as the type of "public action" necessary to support a retaliation claim. However, this is a unique case wherein the Town itself actually sponsored and paid for the private litigation through official action (a vote) endeavoring to take tax payer funds to make an example of Hoagland. The fact that the Town voted to and ultimately did pay almost $200,000.00 in support of the litigation takes this action from "private" to "public" and official in nature.

Had the District Court applied the appropriate standard in evaluating the evidence before it, the Court would have found that issues of material fact preclude the entry of judgment.

B. *Qualified Immunity*[12]

Next, the District Court erred in finding that the named Defendants were immune to Hoagland's § 1983 claims. The trial court held that no First Amendment violation had been committed, and accordingly concluded that the named Defendants could not have "clearly violated established statutory or constitutional rights." [JA491; DE55]. The District Court erred in this regard, because Hoagland's

---

[12] "The Eleventh Amendment generally bars suits against states and their agencies based on their sovereign immunity." *Hale v. Emporia State Univ.*, 266 F. Supp. 3d 1261, 1275 (D. Kan. 2017). *See also Levy v. Kan. Dept. of Soc. & Rehab. Serv.*, 789 F. 3d 1164, 1168 (10th Cir. 2015) (explaining the purpose of sovereign immunity). However, the doctrine of sovereign immunity is not applicable in every case in which a state official is a named defendant. When the litigation "is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). In such cases, the "Eleventh Amendment bars a suit against state officials [only] when the state is the real, substantial party in interest." *Id.* Stated otherwise, "the general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963). The named Defendant's argued that Hoagland's claims were barred by Eleventh Immunity and the District Court *correctly* found that Defendants were <u>not</u> entitled to Eleventh Immunity. [Appendix cite; DE47-1, p. 8-9; DE55, p. 3-4]. Accordingly, Hoagland does not address the Eleventh Amendment Issue in his appellate brief.

rights to be free from retaliation for the exercise of his Constitutional rights is a clearly established right, of which a reasonable person would have known.

Qualified immunity protects public officers from legal action in the performance of their discretionary duties. *Pritchett v. Alford*, 973 F. 2d 307, 312 (4th Cir. 1992). The burden is on the person seeking immunity to prove that he or she was engaged in a "discretionary function" during the time the allegedly unconstitutional actions took place. *See Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1264 (11th Cir. 2004). *See also Storck v. Cty of Coral Springs*, 354 F. 3d 1307, 1314 (11th Cir. 2003) ("Under qualified immunity analysis, the *public official* must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place.").

In the qualified immunity context, the inquiry as to whether the actor was engaged in a discretionary function is two-fold: (1) whether the employee was performing a legitimate job-related function (that is, pursuing a job-related goal); and (2) whether he was doing so through means that were in his power to utilize. *Holloman*, 370 F. 3d at 1265. "Employment by a local, county, state or federal government is not *carte blanche* invitation to push the envelope and tackle matters far beyond one's job description or achieve one's own official goals through unauthorized means." *Id.* In that regard, "pursuing job-related goals through means

that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity." *Id.*

Assuming that a public official meets the initial threshold, described above, he or she is still not entitled to qualified immunity if his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). Courts have found that the rights established by the First Amendment with regard to retaliatory action are <u>well-established</u> rights, of which a reasonable person would and should know.

Accordingly, where the claimed wrongful action states a cognizable claim for retaliation, qualified immunity does not apply to bar the action. *See e.g., Tindal v. Montgomery Cnty, Comm.*, 32 F. 3d 1535, 1540-41 (11th Cir. 1994) (finding that Plaintiff's First Amendment retaliation claim, that was sufficient to survive summary judgment could not be barred by qualified immunity because the rights protected by the First Amendment were well-established principles of which a reasonable person should have been aware); *McCloud v. Testa*, 97 F. 3d 1536, 1561-62 (6th Cir. 1997) (finding the defendant was not entitled summary judgment on his claim for qualified immunity stemming from a First Amendment retaliation claim); *Hunter v. Town of Mocksville, N. Carolina*, 789 F. 3d 389, 402 (4th Cir. 2015) ("In

sum, it was clearly established in the law of this Circuit in December 2011 that speech about 'serious misconduct in a law enforcement agency is protected.").  .

Hoagland first asserts that the named Defendants were not entitled to qualified immunity because they failed to establish that their actions were legitimate job-related functions, for which the named Defendants had legitimate power to utilize. The District Court failed to engage in any analysis regarding whether this threshold burden  had been met; instead simply finding that Defendant's actions did not constitute a First Amendment violation. [JA491; DE55, p. 5].

Hoagland asserts that the named Defendants acted with unprecedented personal bias when they agreed to fund Likins personal litigation with public funds. Although the named Defendants clearly have the authority to allocate public funds, the named Defendants have *admitted* that this allocation must be for a designated public purpose. [JA399-404; DE51-12; 51-13]. Even *the named Defendants could not clearly identify a "public purpose" served by the Likins' litigation*. [JA443; DE51-18, p. 65].[13] The reason that no such purpose could be identified is clear: the Likins litigation serves no public interest whatsoever, instead only validating the personal interest of Defendant Likins. Accordingly, the Defendants through their

---

[13] In deposition, Counsel of record for Hoagland asked Defendant Bennett "Can you make a determination on how [the Likins' litigation] furthers the public objective sitting here today? Defendant Bennett responded, "Nope." *Id.*

own admissions have committed action <u>outside</u> their authority by agreeing to allocate <u>public funds</u> for a private purpose.

Hoagland asserts that *for this reason alone*, particularly in light of the fact that the Defendants <u>bear the burden of proof on this matter</u>, the Defendants are not entitled to qualified immunity. However, assuming *arguendo* that the named Defendants were engaged in a discretionary function, they acted in violation of clearly established constitutional rights.

In the instant case, Defendants, on three separate occasions took retaliatory action against Hoagland for exercising his First Amendment rights. First, in or around December 10, 2015 the named Defendants decided to *fund* the Likins' litigation with public tax payer funds. [JA399-404; DE51-12; DE51-13]. Shortly thereafter, at a public Town meeting the named Defendants publicly humiliated Hoagland, shutting him down mid-speech and informing him he was no longer welcome at meetings. [JA364; DE51-5]. Thereafter, at the next meeting, the named Defendants once again publicly humiliated Hoagland, informing him he could not speak at a Town Meeting.[14] [JA393; DE51-11].

---

[14] Hoagland admits that the named Defendants then took a vote to determine whether Hoagland would be permitted to speak, voting in favor of permitting his speech thereafter; however, this <u>does not change or alter the fact</u> that he was shut-down completely, in public, mid-meeting by the named Defendants.

26

These three actions were reasonably likely to have a chilling effect on speech, when viewed objectively from the perspective of a reasonably firm person. The named Defendants knew or should have known that well-established principles forbid such practices. Accordingly, even assuming that the Defendants were engaged in a "discretionary function" in engaging in the acts explained above, they are not entitled to qualified immunity as to Hoagland's claims.

II.    THE DISTRICT COURT'S ORDER, GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS' IS NOT BASED ON THE RECORD, AND/OR IS CONTRARY TO THE RECORD, PARTICULARLY UNDER THE "LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY" SUMMARY JUDGMENT STANDARD.

Hoagland asserts that the District Court's order granting summary judgment must be *reversed* because the District Court's findings of fact, were clearly contrary to and/or unsupported by the record evidence before it, particularly when viewing such evidence *in the light most favorable to Hoagland*, as the non-moving party.

It is well settled law that this Honorable Court must reverse summary judgment if the District Court's findings of fact are *contrary to the record*. *See Campbell v. Wood*, 18 F. 3d 662, 711-12 (9th Cir. 1994). *See also Guinn v. Chater*, 83 F. 3d 431 (10th Cir. 1996) (reversing the District Court's order where its findings of fact were contrary to the record evidence). Although Hoagland recognizes that the District Court was not *required* to make specific findings of fact in ruling on the motion for summary judgment, the District Court did so. *See generally* Fed. R. Civ. P. 52(a)

27

(2019) (stating that a District Court is not required to make factual findings in ruling on a motion under Rule 56, Federal Rules of Civil Procedure).[15]

Further, although generally, a District Courts finding of fact are reviewed under a *clearly erroneous* standard, this standard is *inapplicable* in the context of review of a motion seeking summary judgment. *See Spannus v. United States Dept. of Justice*, 813 F. 2d 1285, 1288 (4th Cir. 1987); *Sherwood v. Washington Post*, 871 F. 2d 1144, 1145 (D.C. Cir. 1989) ("The 'clearly erroneous' standard of Rule 52(a) is not applicable in connection with a review of summary judgment."); *Waganer v. Sea-Land Serv., Inc.*, 486 F. 2d 955, 960 (5th Cir. 1973) ("This case does not reach us with findings of fact made after trial. If it did our review would be under the 'clearly erroneous' doctrine. But the factual issues have not been tried so that we review the judgment below under the rigid standards attendant upon the entry of summary judgment under Rule 56."); *Albino v. Baca*, 747 F. 3d 1162, 1173 (9th Cir. 2014) (recognizing that the clearly erroneous standard of Rule 52 does not apply to review of a motion for summary judgment).

On review of the factual basis for awarding summary judgment, this Honorable Court must conduct a *de novo* review of the record before it and determine, whether

---

[15] Hoagland was not required to object to the District Court's findings of fact, move to amend them, or move for more definite statement under Rule 52, Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 52(a)(5) (2019).

the court considered *all* the *record evidence* in the *light most favorable to the non-moving party* (appellant). Hoagland asserts that the findings stated in the District Court's order are *contrary* to the record, are *unsupported* by the record, and *fail to consider* record evidence. Hoagland further asserts that the findings of the District Court do not reveal the appropriate standard of deference, of which the non-moving party is entitled to review of a motion for summary judgment.

The District Court made two specific "findings of fact" that are contrary to, and/or unsupported by, the record in granting the Defendant's motion for summary judgment. First, the District Court determined that Hoagland had been permitted to present "his comments <u>in full</u> at both the December and January Council Meetings." [JA490; DE55]. Second, the District Court determined that "the Likins' litigation was not initiated to chill Plaintiff's speech, but rather in response to Plaintiffs' threats to publicly disgrace Likins." [JA490; DE55, p. 4]. Each factual conclusion is contrary to the record.

As to the District Court's first finding, the record evidence clearly indicates that although Hoagland was *ultimately* given an opportunity to speak, he was first *cut off* and his speech prohibited. [JA364; DE51-5] [JA393;DE51-11]. The fact that the named Defendants ultimately *recognized and corrected* their prevention of speech, does *not* indicate that Hoagland was given a "full" opportunity to present his

29

comments. In addition, this finding *completely* ignores the fact that Defendant Bennett actually *directed* Hoagland to refrain from speaking about a particular subject – the Likin's litigation. [JA364; DE51-5]. Accordingly, Hoagland was *actually prohibited* from speaking about a topic that obviously had *public significance,* given the fact that it was *funded* by the Town with use of tax payer money.[16]

In addition, with regard to the District Court's second finding: that the Likins' litigation was instituted "in response to [Hoagland's] threats to publicly disgrace Likins" this finding is also contrary to the record evidence, particularly viewing the same in the *light most favorable to Hoagland*. [JA490; DE55]. At least one of the named Defendants testified under oath that the purpose of the Likins' litigation was to "send a message" to other would be defendants regarding the *methods* of publicly criticizing town council members. [JA490; DE51-19].

In addition to this evidence, Hoagland adamantly asserts and has maintained that his criticisms of Likins are not *defamatory*, but instead are protected free speech. In determining that the Likins' litigation was motivated by Defendant Likins' desire to

---

[16] As stated on numerous occasions, the Likins' litigation was funded to the tune of nearly $200,000.00 by *tax payer funds*, after a vote on the same. Hoagland had a right to speak about the Likins' litigation, the funding of that litigation, and the facts of that litigation as the *public* was funding that litigation. However, the record *clearly establishes* that Hoagland was *prohibited* from speaking in this regard. [JA364; DE51-5].

*remedy alleged defamation*, the District Court *decided* that Hoagland's remarks were unprotected and tortious. This finding is contrary to the record, or at least unsupported by the record – taking the evidence in the light most favorable to Hoagland. *See* Sec. III, *infra*.[17]

Accordingly, the District Court erred in basing its legal conclusions on at least *two* factual findings that are unsupported by, and/or contrary to the record evidence. In addition, the District Court also erred in failing to consider the record evidence *in the light most favorable* to Hoagland, as required on summary judgment. Hoagland asserts that these errors, in and of themselves, warrants reversal of the order of summary judgment.

---

[17] Hoagland further asserts that the District Court's continual comments regarding the *tortious nature of his speech* constitute impermissible determinations of a disputed fact. More specifically, the determination of whether Hoagland's publications toward Likins were *defamatory* or protected *free speech* is being litigated in the Likins' litigation. The determination of whether Hoagland's speech was tortious involves a complex array of factual determinations including: (a) whether Hoagland believed that his comments were true; (b) whether Hoagland was motivated by a public concern in making his remarks, notwithstanding any actual dislike of Likins; (c) whether Hoagland had knowledge that his statements were false, or acted recklessly in that regard. The District Court failed to engage in any analysis of these complex considerations, all of which require factual determinations, in simply stating (as if a matter of law) that Hoagland had defamed Likins, and accordingly Likins' and the named Defendants had a <u>right</u> to engage in any and all of her actions against Hoagland thereafter. *See* Sec. III, *infra*.

31

III.    DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT
IN FAVOR OF THE NAMED DEFENDANTS' AS TO HOAGLAND'S
ABUSE OF PROCSES CLAIM, AS THE EXISTANCE OF MATERIAL
DISPUTES OF FACT PRECLUDE THE ENTRY OF JUDGMENT.

Finally, as to the claim for abuse of process, Hoagland asserts that the trial court
made impermissible findings of fact in ruling on the named Defendant's motion for
summary judgment and accordingly, its order granting summary judgment must be
reversed. More specifically, the District Court found that, "a reasonable fact finder
would not conclude from the record that **the Likins' lawsuit was initiated and
funded** under the council indemnity Resolution **for a legally improper purpose**, such
as to chill Plaintiff's free speech." [Appendix Cite; DE55, p. 5].

In finding that the Likins' litigation *could only have been initiated* for a proper
purpose – to *prevent and remedy Hoagland's allegedly defamatory speech* – the
District Court implicitly found that Hoagland's conduct was not *privileged* under the
First Amendment, and instead, was in fact *defamatory* in nature. This finding is
entirely improper for numerous reasons, first and foremost because constitutional
malice is a state law question of *fact* which must be left for the jury.

"The right of an American citizen to criticize public officials and policies and to
advocate peacefully ideas for change is the central meaning of the First
Amendment." *Glasson v. Cty of Louisville*, 518 F. 2d 899, 904 (6th Cir. 1975),
*overruled on Oth'r grounds Bible Believers v. Wayne Cty, Mich.*, 805 F. 3d 228 (6th

32

Cir. 2015). Further, it is without question that, "[a] defamation claim is, at its root, a

state law tort claim." *Hugger v. Rutherford Institute*, 63 Fed. Appx. 683, 691 (4th

Cir. 2003).[18]

> Under *New York Times Co.*, a plaintiff who is a 'public official' may
> not recover damages for defamation 'relating to his official conduct
> unless he proves that the statement was made with 'actual malice' – that
> is, with knowledge that it was false of with reckless disregard of
> whether it was false or not.

*Hugger*, 63 Fed. Appx. at 691.[19] To that end, "Constitutional malice requires either

a high degree of awareness of the statement's probable falsity or serious doubts as

to its truth." *Meloff v. New York Life Insur. Co.*, 240 F. 3d 138, 146 (2d Cir. 2001).

The *New York Times* standard requires that <u>the public figure prove</u> by a

preponderance of the evidence that the statements at issue were made "in an

unreasonable manner, abusing the occasion or making the statement in furtherance

of an improper purpose." *Id.* However, "if the defendant's statements were made to

further the interest protected by the privilege, it matters not that defendant also

despised plaintiff." *Id.* "Thus, a triable issue is raised *only if* a jury could reasonably

---

[18] Hoagland and the named Defendants have recognized the same, as a State court
claim for defamation is currently awaiting determination by a jury in the Likins'
litigation. [Appendix Cite; DE47-10].

[19] In the Likins' litigation, the parties have stipulated that the *New York Times*
Constitutional malice standard is applicable and accordingly Likins (Plaintiff) must
prove by a preponderance of the evidence that Hoagland's speech was *motivated* for
improper purpose.

conclude that 'malice was *the one and only cause for the publication* [of the defamatory remarks].'" *Id.*[20]

In the instant case, the District Court first and foremost improperly considered the state law issue of defamation which was not ripe for federal review. As stated previously, the issues of defamation, privilege, and constitutional malice are state law questions, which are presently pending before a state law court. The District Court did not have the authority to consider, or attempt to determine these issues and erred in doing so.

However, assuming *arguendo* that the District Court *could* have properly considered these issues, it erred in determining the apparent legality of Hoagland's speech without any of the requisite analysis required by *New York Times Co. v. Sullivan*. The District Court simply determined, without properly deciding that Hoagland's remarks were actionable. This determination *absolutely required* an analysis of whether: (a) Hoagland believed that his comments were true; (b) Hoagland was motivated by a public concern in making his remarks,

---

[20] Under South Carolina defamation law, the question of *actual malice* is one of fact, which must be proven at trial. *See Castine v. Castine*, 743 S.E. 2d 93, 98 (S.C. App. 2013) ("To the extent the existence of common law actual malice becomes an issue, its existence is a question of fact that must be proven at trial."); *Murray v. Holnam Inc.*, 542 S.E.2d 743, 750-51 (S.C. App. 2001) (explaining that *New York Times* malice is generally a factual inquiry for the jury).

notwithstanding any actual dislike of Likins; (c) Hoagland had knowledge that his statements were false, or acted recklessly in that regard; and/or (d) Hoagland was privileged to speak against Likins' due to the *content* and *topic* of his speech.

The District Court's order failed to engage in any analysis of these complex considerations, *all of which require factual determinations*, in simply stating (as if a matter of law) that Likins and the named Defendants had a <u>right</u> to engage in any and all of her actions against Hoagland thereafter. Accordingly, any determination as to the *legal motivation* of the named Defendants in sponsoring and/or initiating the Likins' litigation failed to utilize the appropriate standard, which warrants reversal.

Finally, Hoagland asserts that even assuming authority and a proper analysis under the *New York Times Co* standard

The District Court made impermissible *findings of fact*, which are contrary to the record, in concluding that the record evidence shows *no other purpose* apart from stopping tortious speech. [JA491; DE55] There was ample record evidence before the District Court, from which a reasonable juror could have concluded that the named Defendants instituted process for an improper purpose and with ulterior motives.

35

First, Defendant Edwards, stated under oath that the purpose of the Likins' litigation was to "send a message." [JA458; DE51-19]. In addition, a Freelance Reporter, siding with the named Defendants stated in an email on January 4, 2016 that Hoagland would eventually be punished for his constant political speech, threatening: "Remember the Law of Karma, when it hits you, you will know it, I promise. And it's coming amigo. Trust me." [JA145-146; DE47-8]. Further, at least two of the named Defendants admitted that Hoagland's publications were *motivated* by a *public* concern – namely Likins' vote regarding the Chamber of Commerce Contract. [JA460; JA475; DE51-20; DE51-19]. In fact, Likins' admitted that whether she was in fact corrupt, or a liar would be a matter of public concern; these are the principal allegations that support her defamation claim. [JA476; DE51-20].

In the light most favorable to Hoagland, these record facts establish that at the very least there is a jury question as to *what* the motivation behind the initiation of process against Hoagland actually was. Further, there are clearly jury questions regarding whether Hoagland's speech was protected by the First Amendment and/or whether he acted with *Constitutional malice* in publishing his remarks toward Likins. These factual issues are to be determined by the State court in the Likins' litigation and are ripe for consideration by a jury in that matter. These questions of fact preclude the entry of judgment as to Hoagland's claim for abuse of process and

the District Court erred in granting the Defendants' motion, notwithstanding these factual questions.

## PRAYER FOR RELIEF

WHEREFORE, Hoagland prays this Honorable Court *reverse* the Order and Final Judgment in the above styled cause because: (1) the District Court's findings are contrary to, and/or unsupported by the record evidence; and/or (2) the District Court reversibly erred in applying the incorrect legal standards to Hoagland's § 1983 claim and the application of qualified immunity thereto; and/or (3) the District Court reversibly erred in weighing the evidence and making determinations of disputed facts regarding the legality of Hoagland's speech toward Likins' and the motivation behind the initiating of process in the Likins' litigation.

## CERTIFICATE OF FONT COMPLIANCE

I hereby certify that this brief was composed using 14-point Times New Roman font in accordance with the Federal Rules of Appellate Procedure, and that the length of the initial brief does not exceed thirteen thousand (13,000) words.